Jan ROWLEY, Plaintiff,

v.

AMERICAN AIRLINES, Defendant.

Civ. No. 94–433–FR.

United States District Court,
D. Oregon.

May 15, 1995.

---

See also, 875 F.Supp. 708.

Darcy Norville, Portland, OR, Douglas L. Parker, Laura Rovner, Washington, DC, for plaintiff.

Steven O. Rosen, James M. Shore, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for defendant.

## OPINION

FRYE, Judge:

The matter before the court is the motion of the plaintiff, Jan Rowley, for partial summary judgment (# 63).

## UNDISPUTED FACTS

Jan Rowley is a woman with a disability who uses a motorized, three-wheeled scooter for mobility. On or about April 6, 1993, Rowley purchased a round-trip ticket for transportation between Portland, Oregon and Dallas, Texas from the defendant, American Airlines. She was scheduled to depart on August 12, 1993 on flight # 812 and to return on August 20, 1993 on flight # 891. Rowley and her travel agent informed American Airlines that Rowley had special needs because of her disability.

Rowley checked her motorized scooter upon arriving at the Portland Airport as required by American Airlines. The scooter was disassembled, marked with an "escort tag," and placed in the cargo hold of the airplane with the battery removed.

At the Dallas airport prior to her return flight to Portland, Oregon, Rowley's motorized scooter was disassembled, marked with an "escort tag," and placed in the cargo hold of the airplane with the battery removed. While waiting in the Dallas airport for her flight to Portland, Oregon, Rowley asked to be moved from the wheelchair used to transport her to the gate. At her request, she was moved to a stationary seat, where she was not independently mobile.[1]

Rowley advised American Airlines by telephone and in writing of her complaints about the treatment she had received on August 12, 1993 on flight # 812 and on August 20, 1993 on flight # 891. On September 9, 1993, Rowley wrote to American Airlines stating that she believed American Airlines had failed to address her complaints. In this letter, Rowley again advised American Airlines of her complaints. American Airlines apologized in writing for Rowley's dissatisfaction with the service she had received and encouraged Rowley to travel with American Airlines again.

### APPLICABLE LAW

As a carrier providing air transportation, American Airlines was subject to the requirements of the Air Carrier Access Act, 49 U.S.C.App. § 1374 (ACAA), as well as the regulations promulgated by the Department of Transportation implementing the ACAA during the relevant time period.

### CONTENTIONS OF THE PARTIES

Rowley contends that as a matter of law American Airlines violated 14 C.F.R. § 382.39(a)(3) by leaving her unattended for more than thirty minutes in a chair in which she was not independently mobile; that American Airlines violated 14 C.F.R. § 382.41(f) by failing to return her scooter to

her as near as possible to the door of the airplane after each flight and by failing to ensure that her scooter was one of the first items retrieved from the baggage compartment of the airplane; that American Airlines violated 14 C.F.R. § 382.43 by failing to reassemble her scooter before returning it to her after flight # 891 from Dallas, Texas; and that, in responding to her complaints, American Airlines failed to summarize the facts of her complaint, did not admit or deny her complaint, failed to explain what steps it planned to take in response to her complaint, and failed to inform her that she could pursue an enforcement action with the Department of Transportation, all in violation of 14 C.F.R. § 382.65(b)(3).

American Airlines contends that Rowley's motion for partial summary judgment should be denied because the undisputed facts do not support a finding of intentional discrimination as required under the ACAA. American Airlines also contends that it has raised issues of fact regarding the credibility of Rowley and her traveling companion, Daphne Schainck. American Airlines also contends that the regulations at issue contain terms such as "unattended," "timely" and "promptly," which raise issues of fact.

American Airlines argues that the affidavits it has submitted from its personnel create genuine issues of fact because their testimony by affidavit establishes that the routine business practice of American Airlines is to provide special assistance to passengers who so request; to return any motorized scooter that is checked as baggage to its owner in the gate area; to load into the baggage compartment first, and to retrieve last, items marked with an "escort tag;" and to have an employee at a gate at least one hour before a flight departs.

American Airlines contends that its written responses to Rowley's complaints were adequate under 14 C.F.R. § 382.65(b)(3). American Airlines informed Rowley that it was aware of her displeasure; that it had contacted the American Airlines personnel in Portland, Oregon and Dallas, Texas who were responsible regarding her complaints; that

---

**1.** Rowley's scooter was damaged before it was returned to her after flight # 891. American Airlines has compensated Rowley for the cost of the repairs to her scooter.

an investigation was ordered; and that American Airlines personnel receive continuous training. In addition, personnel of American Airlines discussed Rowley's complaints with her shortly after her letter was received; sent her a check to reimburse her for the damage to her scooter; and sent her a transportation voucher as a gesture of good will. American Airlines argues that its failure to advise Rowley of her right to pursue an enforcement action with the Department of Transportation did not cause Rowley any damages because Rowley had informed American Airlines that she was considering taking her complaints to the Department of Transportation, and had in fact sent a carbon copy of her written complaints to the Department of Transportation.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.

*United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir.1981). Finally, summary judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.*, 575 F.2d 692, 699 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

## ANALYSIS

Rowley moves the court for partial summary judgment on Counts I, II, III and V of her complaint. In those counts, Rowley alleges violations of regulations promulgated by the Department of Transportation to implement the ACAA. Before determining whether Rowley is entitled to an order of partial summary judgment on any one of those counts, the court will address an issue raised by American Airlines.

American Airlines contends that, in order to prevail on her claims under the ACAA, Rowley is required to prove that American Airlines intentionally discriminated against her on the basis of her disability. American Airlines contends that there is a genuine issue of fact regarding whether it intentionally discriminated against Rowley on the basis of her disability, and therefore Rowley's motion for partial summary judgment should be denied.

In 1986, the United States Congress enacted the ACAA, which prohibits air carriers from discriminating against persons with disabilities. Congress delegated the authority to promulgate regulations to implement the ACAA to the Secretary of Transportation. 100 Stat. 1080 (1986). The Department of Transportation has promulgated such regulations, which are equivalent to a legislative determination of the type of conduct that constitutes illegal discrimination on the basis of a person's disability. Those regulations have the force and effect of law. *Carter v. Derwinski*, 987 F.2d 611, 615 (9th Cir.1993). A violation of the regulations of

the Department of Transportation is a violation of the ACAA, and no proof of intent to discriminate on the basis of a person's disability is required. This conclusion is consistent with the judicial interpretation of the regulations implementing the Americans with Disabilities Act, 42 U.S.C. § 12132(ADA). *See Helen L. v. DiDario,* 46 F.3d 325, 333 (3rd Cir.1995) ("Because the ADA evolved from an attempt to remedy the effects of 'benign neglect' resulting from the 'invisibility' of the disabled, Congress could not have intended to limit the Act's protections and prohibitions to circumstances involving deliberate discrimination." *Id.* at 335.) [2] Therefore, Rowley need only prove that American Airlines violated one or more of the regulations implementing the ACAA to prove a violation of the ACAA; she need not prove that American Airlines did so because of an affirmative animus toward persons with disabilities.

■ American Airlines also contends that Rowley's motion for partial summary judgment should be denied because it has raised issues regarding her credibility which must be resolved by the trier of fact. American Airlines argues that the factual dispute between the parties regarding some of Rowley's claims undermines the credibility of Rowley and her traveling companion, rendering summary judgment on the basis of their affidavits inappropriate. However, the evidence submitted by American Airlines shows only that the flight attendants who were deposed by the parties do not remember any unusual events occurring during the relevant time period. That is not sufficient to undermine the credibility of Rowley. "[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment." *National Union Fire Ins. Co. v.*

*Argonaut Ins. Co.,* 701 F.2d 95, 97 (9th Cir. 1983).

■ In Count I of her complaint, Rowley alleges that American Airlines violated 14 C.F.R. § 382.39(a)(3), which provides: "Carriers shall not leave a handicapped passenger unattended in a ground wheelchair, boarding wheelchair, or other device, in which the passenger is not independently mobile, for more than 30 minutes." Rowley submits her affidavit and the affidavit of her traveling companion, Daphne Schainck, in support of her motion for partial summary judgment on Count I of her complaint. Both Rowley and Schainck attest that Rowley was seated in a gate lounge chair, in which she was not independently mobile, for more than an hour unattended by an employee of American Airlines.

In response to Rowley's motion for partial summary judgment on Count I of her complaint, American Airlines agrees that, at her request, Rowley was transferred from a ground wheelchair [3] to a gate lounge seat. However, American Airlines argues that Rowley was never immobile or unattended because she was with her traveling companion and there was a ground wheelchair in the gate area. American Airlines also submits the affidavit of Dwight Crudup, Supervisor of Passenger Services for American Airlines, in which he states:

4. A contractor to American provides trolleys at the Dallas/Fort Worth Airport that regularly travel the entire length of the concourse on which American operates. At around 11:00 a.m. on a Friday in August 1993, a trolley would probably have passed each gate every 10 minutes or so. A purpose of the trolleys is to provide transportation assistance to passengers who cannot or do not want to walk to or between gates. The drivers of the trolleys are expected to stop and assist or obtain

**2.** American Airlines relies on *Tallarico v. Trans World Airlines, Inc.,* 881 F.2d 566 (8th Cir.1989), in support of its contention that proof of an intent to discriminate is required to prove a violation of the ACAA. However, the decision in *Tallarico* did not address the issue of whether the plaintiff had to prove intentional discrimination in order to prevail under the ACAA. Further, *Tallarico* involved events which occurred before

the Department of Transportation promulgated regulations implementing the ACAA.

**3.** For purposes of this motion, American Airlines concedes that ground wheelchairs do not provide independent mobility because they do not have handrims on the wheels. Defendant's Concise Statement of Facts, p. 5 (accepting Plaintiff's Fact No. 12).

assistance for any passenger who requests assistance.

. . . .

6. Red courtesy telephones are available at or near the gates for passenger use. Had plaintiff or her traveling companion requested that someone assist her with mobility while she was seated at a gate, American's personnel would have promptly assisted plaintiff because it is American's business practice to promptly assist passengers.

*Id.* at 2.

American Airlines argues that this evidence raises a genuine issue of fact as to whether Rowley was left "unattended" within the meaning of section 382.39. However, none of this evidence controverts the affidavits of Rowley and Schainck that Rowley was not attended for more than thirty minutes at a time when she was not independently mobile and had only Schainck, who was eighty-one years old, to assist her with her mobility. Deposition of Janice L. Rowley, pp. 62–63. Although Schainck might have used the courtesy telephone in order to seek the assistance of an employee of American Airlines or might have flagged down a passing trolley, her ability, if any, to seek assistance from American Airlines does not absolve American Airlines from its duty to Rowley under section 382.39 not to leave her unattended for more than thirty minutes in a device in which she was not independently mobile. In promulgating section 382.39, the Department of Transportation said that:

> The Department does believe that carriers should not strand handicapped passengers in wheelchairs in which the passengers are not independently mobile (e.g., by putting a person who uses an electric wheelchair into a manual ground chair for long periods in the terminal in between flights). This can have adverse health consequences for some passengers, as well as creating inconvenience. The rule will prohibit leaving a handicapped person in this predicament for more than 30 minutes. After that time, the carrier would have to provide the person's own wheelchair, another wheelchair in which the individual could be independently mobile, or, on request, a

person to assist with mobility (e.g., if the person asks to have the ground wheelchair pushed to a concession stand, the carrier would find someone to push).

55 Fed.Reg. 8008, 8035.

American Airlines further contends that Rowley could not have been left unattended for more than one hour, as she and her traveling companion have stated in their affidavits, because it is the business practice of American Airlines to have someone at the gate at least one hour before the departure of any flight, and "most of the time ... there's one person at the gate at all times." Deposition of Brenda Christopher, p. 2.

American Airlines argues that the affidavits and deposition testimony of its representatives regarding the routine business practices of American Airlines are sufficient to create a genuine issue of fact. Rowley responds that the affidavits and deposition testimony of the supervisors and employees of American Airlines regarding its routine business practices are not adequate to create a genuine issue of fact because American Airlines has failed to provide a proper foundation for the admissibility of such evidence under Rule 406 of the Federal Rules of Evidence.

Rule 406 of the Federal Rules of Evidence provides: "Evidence of ... the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. Under Rule 406, the proponent of evidence must "show a sufficient number of specific instances of conduct to support" an inference of a routine business practice. *Mobil Exploration and Producing U.S., Inc. v. Cajun Constr. Serv.,* 45 F.3d 96, 99 (5th Cir.1995).

■ Evidence of the routine business practices of American Airlines is admissible under Rule 406 of the Federal Rules of Evidence to prove that it acted in conformity with those routine business practices. Accordingly, evidence of the routine business practices of American Airlines is admissible. However, Rowley is entitled to present evi-

dence of instances in which American Airlines failed to follow its routine business practices.[4] In her reply memorandum, Rowley asserts that she requested documentation showing the number of complaints that American Airlines has received from disabled passengers regarding its services, and that American Airlines took the position that such information was irrelevant. The court denied Rowley's motion to compel the requested documentation on the ground that it was not relevant to establish that American Airlines had violated the ACAA or the regulations of the Department of Transportation (or to prove the intentional or negligent infliction of severe emotional distress). However, in her motion to compel, Rowley did not raise the issue of whether the information would be relevant to impeach evidence of the routine business practices of American Airlines, and, indeed, American Airlines previously had not offered such evidence. For the purposes of this motion, the court concludes that evidence of the routine business practices of American Airlines is admissible evidence under Rule 406. However, Rowley is entitled to impeach such evidence. Accordingly, American Airlines shall produce the documentation responsive to Rowley's Requests for Production Nos. 11 and 16.

▇ Resolving all reasonable inferences from the evidence in the light most favorable to American Airlines, the court finds that there is a genuine issue of fact regarding whether Rowley was left unattended in the gate lounge seat for more than thirty minutes. Rowley's motion for partial summary judgment on Count I of her complaint is denied.

In Count II of her complaint, Rowley alleges that American Airlines violated 14 C.F.R. § 382.41(f), which provides, in relevant part:

(f) When passenger compartment stowage is not available, carriers shall provide for the checking and timely return of passengers' wheelchairs and other assistive devices *as close as possible to the door of the aircraft,* so that passengers may use their own equipment to the extent possible, except where this practice would be inconsistent with [Department of Transportation] regulations governing the transportation of hazardous materials.

(1) At the request of the passenger, the carrier may return wheelchairs or other assistive devices to the passenger at the baggage claim area instead of at the door of the aircraft.

(2) In order to achieve the timely return of wheelchairs, passengers' wheelchairs and other assistive devices shall be among the first items retrieved from the baggage compartment. (Emphasis added).

Rowley testified at her deposition that she did not request that her scooter be returned to her at the baggage claim area. She also testified that her scooter was not returned to her until after all of the other baggage had been unloaded. Deposition of Janice L. Rowley, p. 79.

American Airlines submits the affidavit of Dwight Crudup, Supervisor of Passenger Services for American Airlines, in which he states: "It was and is the business practice of American to bring scooters to the gate." *Id.* at 3. American Airlines also submits the affidavit of Nancy Funk, General Manager of the Portland station of American Airlines, in which she states:

3. At Portland International Airport, baggage crews are unable to carry scooters and other heavy equipment up the stairs that adjoin the jetway without risk of injury. The Port of Portland owns the terminal and has not modified it to add elevators on Concourse C, where the American gates are located.

---

4. American Airlines carries the burden of proving a routine business practice for the purposes of Rule 406. In this motion for summary judgment, in which all reasonable inferences are resolved in favor of American Airlines, the court concludes that American Airlines has made a sufficient showing of admissibility under Rule 406. However, the court will defer a definitive ruling on the admissibility of evidence of the routine business practices of American Airlines until trial. At trial, Rowley may impeach evidence of the routine business practices of American Airlines with evidence of instances in which American Airlines did not follow its routine business practices.

4. American's business practice is to load escorted items last and to remove them first. If plaintiff's scooter was so tagged, American's business practice would have been to load it last and to remove it first from the baggage compartment of the airplane.

*Id.* at 2. American Airlines argues that evidence of its routine business practices creates a genuine issue of fact regarding whether it returned Rowley's scooter in compliance with the regulations of the Department of Transportation.

Whether American Airlines returned Rowley's scooter as close to the door of the aircraft as possible at the airports in Dallas, Texas and Portland, Oregon is a question of fact for the trier of fact. In view of the evidence that the routine business practices of American Airlines are to bring scooters to the gate and to remove "escort" tagged items first from the aircraft, the court finds a genuine issue of fact regarding whether American Airlines complied with 14 C.F.R. § 382.41(f). Accordingly, the motion of Rowley for summary judgment on Count II of her complaint is denied.

In Count III of her complaint, Rowley alleges a violation of 14 C.F.R. § 382.43(a), which provides that "[w]hen wheelchairs or other assistive devices are disassembled by the carrier for stowage, the carrier *shall reassemble them and ensure their prompt return to the handicapped passenger.* Wheelchairs and other assistive devices shall be returned to the passenger in the condition received by the carrier." (Emphasis added).

Rowley testified at her deposition that American Airlines did not reassemble her scooter, and that Lyle Admundson, a friend of Rowley, reassembled the scooter. Deposition of Janice L. Rowley, p. 80; Affidavit of Daphne Schainck, ¶ 20, p. 5.

American Airlines contends that Rowley has failed to show that she asked American Airlines to reassemble her scooter and that it refused to do so. Section 382.43(a) mandates that a carrier reassemble motorized scooters that have been disassembled for stowage. The mandate of section 382.43(a) is not limit-

ed to those instances in which the passenger requests that American Airlines reassemble the scooter. Accordingly, the court grants summary judgment to Rowley on that part of Count III.

In Count V of her complaint, Rowley alleges that American Airlines violated 14 C.F.R. § 382.65(b)(3), which provides:

(3) The carrier shall make a dispositive written response to a written complaint alleging a violation of a provision of this part within 30 days of its receipt.

(i) If the carrier agrees that a violation has occurred, the carrier shall provide to the complainant a written statement setting forth a summary of the facts and what steps, if any, the carrier proposes to take in response to the violation.

(ii) If the carrier denies that a violation has occurred, the response shall include a summary of the facts and the carrier's reasons, under this part, for the determination.

(iii) The statements required to be provided in paragraph (b)(3) of this section shall inform the complainant of his or her right to pursue [Department of Transportation] enforcement action under this section.

In response to the complaint written by Rowley, American Airlines spoke with Rowley and wrote her a letter, in which its representative stated, in part: "Please be assured that we have followed through with the responsible personnel at both stations so that we can avoid similar problems in the future." Exhibit 1 to Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment. In a second letter, American Airlines also informed Rowley that it would investigate her complaints. However, American Airlines did not admit or deny that any violations occurred and did not summarize the facts regarding Rowley's complaint. While American Airlines also failed to inform Rowley of her right to pursue an enforcement action with the Department of Transportation, it is undisputed that Rowley knew of her right to pursue an enforcement action with the Department of Transportation; that she sent a carbon copy of the

letters that she sent to American Airlines to the Department of Transportation; and that she informed American Airlines that she was considering taking the matter to the Department of Transportation. Under these circumstances, the court finds that there is a genuine issue of fact regarding whether American Airlines violated 14 C.F.R. § 382.65(b)(3). Accordingly, the motion of Rowley for partial summary judgment regarding Count V of her complaint is denied.

## CONCLUSION

The motion of Rowley for partial summary judgment (# 63) is granted in part and denied in part. The motion is denied as to Counts I, II and V and is granted as to Count III with regard to the failure of American Airlines to reassemble her motorized scooter.

## ORDER

IT IS HEREBY ORDERED that the motion of the plaintiff for partial summary judgment (# 63) is GRANTED in part and DENIED in part. The motion is DENIED as to Counts I, II and V and is GRANTED as to Count III with regard to the failure of the defendant to reassemble the plaintiff's motorized scooter.