## In re SYNCOR ERISA LITIGATION
### No. CV 03–2446RGK(RCX).

United States District Court,
C.D. California.

Jan. 11, 2006.

Christopher Kim, Lisa J. Yang, Lim, Ruger & Kim, Los Angeles, CA, Edward Chang, Schiffrin and Banoway, Radnor, PA, Edward W. Ciolko, Joseph H. Meltzer, Richard S. Schiffrin, Schiffrin and Barroway, Bala Cynwyd, PA, Elizabeth A. Leland, Lynn Lincoln Sarko, T. David Copley, Tobias Kammer, Keller Rohrback, Seattle, WA, Gary A. Gotto, Dalton, Gotto, Samson & Kilgard, Phoenix, AR, Ron Kil-

gard, Keller Rohrback, Phoenix, AR, Michael M. Goldberg, Clancy, Binkow and Goldberg, Los Angeles, CA, Steven G. Pearl, Steven G. Pearl Law Offices, Encino, CA, for Carol Pilkington, Donna Brown, Karen Thompson, Cynthia Dunn, Antoinette Hart, Shirley Nobrega, Deborah Pinner, Pamela Thomson, and Cherie Brannan, on behalf of themselves and a class of all others similarly situated.

Ted Allan Gehring, Gibson, Dunn & Crutcher, Los Angeles, CA, for Cardinal Health Inc., Robert D. Walker, and Paul S. William.

Benjamin Zazove, Michael M. Farhang, Ted Allan Gehring, Daniel S. Floyd, Gibson, Dunn and Crutcher, Los Angeles, CA, for Syncor International Corp.

Christopher C. Scheithauer, Francisca M. Mok, Gordon A. Greenberg, McDermott, Will & Emery, Los Angeles, CA, Nancy G. Ross, McDermott, Will & Emery, Chicago, IL, for Monty Fu.

Benjamin Zazove, Michael M. Farhang, Ted Allan Gehring, Daniel S. Floyd, Gibson, Dunn and Crutcher, Los Angeles, CA, Gail Jeanne Standish, Winston and Strawn, Los Angeles, CA, for Robert G. Funari.

KLAUSNER, District Judge.

Proceedings: (IN CHAMBERS) MOTION FOR SUMMARY JUDGMENT OF DEFENDANT SYNCOR INTERNATIONAL CORPORATION AND ROBERT G. FUNARI (DE 161); AND MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT MONTY FU (DE 168)

## I. INTRODUCTION

This is a class action brought on behalf of all persons who were participants in Syncor International Corporation's ("Syncor") ERISA Plan. The class alleges that Syncor and two members of Syncor's Board of Directors ("Board") (collectively, "Defendants") violated their fiduciary duty to Plaintiffs by investing in Syncor stock while the company was engaged in an international bribery scheme.

Presently before the Court is Defendant Syncor and Defendant Robert G. Funari's ("Funari") Motion for Summary Judgment. Also before the Court is Defendant Monty Fu's ("Fu") Motion for Summary Judgment. For the reasons set forth below, the Court grants Syncor and Funari's Motion for Summary Judgment and grants Fu's Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

According to the parties' allegations, the pertinent facts are as follows:

The eight named Plaintiffs in this case were all employed by Syncor between July 26, 2000, and January 1, 2003 (the "class period") and were participants in Syncor's Employees' Savings and Stock Ownership Plan (the "Plan").[1] Plaintiffs' class action complaint asserts causes of action against Syncor and the two Board members who Plaintiffs allege are all fiduciaries of the Plan. Syncor was the Plan sponsor, a Plan administrator, and a fiduciary. It relied on its Board and acted through its officers and employees who were appointed to perform plan-related functions (the "Committee Members").[2] Syncor's Board was responsible for appointing the Plan's Committee Members, and the Board had final decision-making

---

[1] Syncor provided high technology health care services and was acquired by Cardinal Health, Inc. on January 1, 2003.

[2] The Committee Members were appointed to oversee the Plan's operation and carry out certain delegated Plan administrative duties. The Court dismissed all of Plaintiffs' claims

authority regarding all aspects of the Plan's administration. The Board members included Monty Fu (Syncor's co-founder and chairman of the Board) and Robert Funari (Syncor's chief executive officer, president, and Board member) (collectively, "Director Defendants").

The Plan permitted participants to save for retirement and it was an ERISA plan. The Plan was comprised of two separate components. First, the Plan's 401(k) component permitted participants to contribute between one and fourteen percent of their compensation to the Plan each pay period. Plaintiffs could invest their contributions in any of nine available investment funds chosen by Syncor. Second, the Plan had an employee stock ownership plan ("ESOP") component in which participants could invest up to an additional two percent of pre-tax contributions in Syncor stock.[3] During the class period, Syncor stock constituted between sixty-six and seventy-seven percent of the Plan's assets.

On June 14, 2002, Syncor and Cardinal Health ("Cardinal") announced that Cardinal would acquire Syncor in a stock-for-stock merger. Approximately six months later, Cardinal announced on November 6, 2002, that while doing its due diligence investigation related to the merger, it had uncovered illegal payments made by a subsidiary of Syncor in Taiwan and China. Upon disclosure of the illegal payments, the price of Syncor stock dropped. Subse-quently, Cardinal reduced the exchange rate of 0.52 shares of Cardinal stock for each Syncor share to 0.47. Plaintiffs allege that this significantly reduced the consideration to be paid to Syncor share-holders.[4]

Plaintiffs allege that Syncor stock was an imprudent investment because throughout the class period, Syncor's international subsidiaries were engaged in a foreign bribery scheme whereby illegal payments were made to foreign doctors in order to increase sales of Syncor's radiopharmaceutical services. Plaintiffs contend that the bribery scheme was approved of and implemented by the highest levels of Syncor's management. The payments violated the Foreign Corrupt Practice Act ("FCPA") and resulted in the Securities and Exchange Commission ("SEC") and the Department of Justice ("DOJ") bringing actions against Syncor.[5] Plaintiffs allege that because Plan participants did not know about the bribery scheme, Defendants misled them about the appropriateness of investing in Syncor stock.

Plaintiffs contend that Defendants either knew or should have known that Syncor stock was not a prudent Plan investment. Plaintiffs allege that Defendants failed to investigate whether Syncor stock was a prudent investment, to monitor the Plan, and to provide Committee Members with accurate information regarding Syncor.

---

against the Committee Members on August 23, 2004.

**3.** An ESOP is an eligible individual account plan ("EIAP") within the meaning of ERISA § 407(d)(3)(A). 29 U.S.C. § 1107(d)(3)(A).

**4.** As of January 1, 2003, 2,895,292.487 common shares of Syncor were in the Plan's stock fund investment option, with a total value of $80,584,348. These shares were exchanged on that date for 1,361,452.073 shares of Cardinal common stock.

**5.** On December 2, 2002, Syncor entered into a non-prosecution agreement with the DOJ. On December 3, 2002, Syncor Taiwan, Inc., a subsidiary of Syncor, entered into a plea agreement with the DOJ in which Syncor Taiwan pleaded guilty to one count of violating the FCPA and paid a fine of $2 million. On December 3, 2002, Syncor also entered into a consent decree with the SEC in which Syncor agreed to entry of a cease and desist order and agreed to pay a fine of $500,000. Monty Fu, Chairman of Syncor, has surrendered $2.5 million in Syncor stock to reimburse Syncor for the fines.

Plaintiffs' Consolidated Complaint alleges the following causes of action: (1) failure by Syncor to prudently and loyally manage Plan assets in violation of ERISA §§ 404(a)(1)(A)-(D) and 409 and (2) failure by Syncor and the Director Defendants to monitor the Committee Members and provide them with accurate information in violation of ERISA §§ 404(a)(1)(A)-(D) and 405.

## III. JUDICIAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Upon such a showing, the Court may grant summary judgment "upon all or any part thereof." Fed. R.Civ.P. 56(a), (b).

To prevail on a summary judgment motion, the moving party must show there are no triable issues of fact as to matters upon which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. See Celotex Corp., 477 U.S. at 326, 106 S.Ct. 2548.

To defeat a summary judgment, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed.R.Civ.P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir.1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. See Celotex Corp., 477 U.S. at 324, 106 S.Ct. 2548.

## IV. DISCUSSION [6]

Before the Court is Syncor and Funari's Motion for Summary Judgment and Fu's Motion for Summary Judgment. Fu's Motion relates only to Count Two of the Consolidated Complaint and will therefore be addressed in conjunction with Syncor and Funari's Motion for Summary Judgment on Count Two. For the reasons set forth below, the Court grants Defendant Syncor and Funari's Motion for Summary Judgment and grants Defendant Fu's Motion for Summary Judgment.

### A. Plaintiffs' Claim for Syncor's Alleged Failure to Prudently and Loyally Manage Plan Assets

In Count One of the Consolidated Complaint, Plaintiffs allege that Syncor failed to prudently and loyally manage Plan assets which resulted in a breach of fiduciary duties in violation of ERISA §§ 404(a)(1)(A)-(D) and 405, 29 U.S.C. §§ 1104(a)(1)(A)-(D) and 1105.[7] Specifically, Plaintiffs allege that Syncor breached its duty to prudently and loyally manage

---

**6.** Pursuant to Federal Rule of Evidence 201(d), the Court takes judicial notice of (1) Syncor's 10–Q and 10–K filed with the Securities and Exchange Commission; (2) Summary of Syncor's Financial Results complied from the SEC filings; and (3) spreadsheets of historical stock prices for Syncor, Cardinal Health, quotes for the S & P 500, and quotes for the NASDAQ Composite Index, as they

bear direct relation to matters at issue. See United States ex rel Robinson Rancheria Citizens Council v. Borneo, 971 F.2d 244, 248 (9th Cir.1992).

**7.** Count One is alleged only against Syncor. The Court dismissed this Count as to the Committee Members on August 23, 2004.

the Plan by continuing to invest Plan assets in Syncor stock despite Syncor's knowledge that Syncor stock was an unsuitable investment for the Plan because of the illegal overseas payments.

█ Under ERISA, fiduciaries are required to "discharge their duties with prudence, to diversify investments, to act solely in the interest of the participants, and to comply with the terms of the plan in so far as they don't conflict with other ERISA laws." *In re Syncor ERISA Litig.*, 351 F.Supp.2d 970, 978 (C.D.Cal.2004) (summarizing 29 U.S.C. § 1104(a)(1)). With regard to prudence, a fiduciary shall "discharge his duties ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1096–97 (9th Cir.2004).

### 1. *ERISA Exempts EIAP Fiduciaries from the Duty to Diversify Holdings in Company Stock*

As an initial matter, Plaintiffs' allegations concern only Syncor stock as a Plan asset, thus only the Plan's ESOP component is at issue and not the Plan's 401(k) component. *See In re Syncor ERISA Litig.*, 351 F.Supp.2d at 980 (finding only the ESOP component at issue in the litigation). Moreover, Plaintiffs concede that Defendants' Plan qualifies as an eligible individual account plan ("EIAP") under ERISA. (Zazove Decl., Exh. B). *See* 29 U.S.C. § 1107(d)(3)(A). The Ninth Circuit has recognized that EIAPs, unlike traditional pension plans governed by ERISA, "are not intended to guarantee retirement benefits and indeed, by their very nature, place employee retirement assets at much greater risk than does the typical diversified ERISA plan." *Wright*, 360 F.3d at

1097 n. 2 (internal citation and quotation marks omitted).

ERISA section 404(a)(2), 29 U.S.C. § 1104(a)(2), exempts fiduciaries of EIAPs from certain requirements of Section 1104(a)(1). Specifically, Section 404(a)(2) exempts EIAPs from ERISA's diversification requirement and its prudence requirement *to the extent* that it requires diversification. 29 U.S.C. § 1104(a)(2) (emphasis added). EIAP's are exempt from these requirements because of "the strong policy favoring investment in employer stock." *In re Calpine Corp. ERISA Litig.*, 2005 WL 1431506 at *4 (N.D.Cal.2005). Thus, under the plain meaning of Section 404(a)(2), a fiduciary of an EIAP "is exempt from any duty to diversify the plan's holdings in employer stock." *Id.*

█ Defendant Syncor argues that because ERISA Section 404(a)(2) exempts EIAP fiduciaries from the duty to diversify holdings in company stock, that Syncor, as an EIAP fiduciary, cannot have violated its fiduciary duties by failing to diversify Syncor stock in the Plan. Plaintiffs concede that Syncor is "indisputably exempt" under Section 404(a)(2) from ERISA's mandated diversification of pension plan assets. (Pl. Opp. At 5). Thus, the Court finds that as a matter of law, Syncor has not breached its fiduciary duty by failing to diversify the Plan's holdings of Syncor stock.

### 2. *Syncor Stock was not an Imprudent Investment*

Despite the exemptions of Section 1104(a)(2), courts have determined that these statutory exemptions do not relieve EIAP fiduciaries from the general requirement in Section 1104(a)(1) that fiduciaries discharge their duties in a prudent manner. *Wright*, 360 F.3d at 1097; *see also Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir.1995). With regard to this prudence

requirement, the Ninth Circuit noted in *Wright* that the Third and Sixth Circuits have adopted an intermediate prudence standard. *Id.* Under this intermediate prudence standard (the "*Moench* presumption") there is a presumption that an EIAP fiduciary who invests in employer stock has acted consistently with ERISA. *Id.* (citing *Moench v. Robertson*, 62 F.3d 553, 571 (3rd Cir.1995)). Under *Wright*, in order to rebut the *Moench* presumption, a plaintiff must demonstrate that the fiduciaries knew that the "company's financial condition is seriously deteriorating and that there is a genuine risk of insider self-dealing." *In re Calpine Corp. ERISA Litig.*, 2005 WL 1431506 at *5 (citing *Wright*, 360 F.3d at 1098).

Syncor claims that it is entitled to judgment as a matter of law because Plaintiffs have not, and cannot, rebut the presumption that Syncor acted consistently with ERISA by investing in Syncor's ESOP during the class period. Syncor claims that Plaintiffs have failed to meet *Wright's* requirement of showing that Syncor knew that its financial condition was seriously deteriorating during the time the fiduciaries invested in Syncor stock. Syncor maintains that its viability as a company was never threatened during the class period, even after the international bribery scheme was publicly disclosed. Moreover, Syncor argues that its financial statements conclusively show that Syncor remained profitable throughout the class period.

Plaintiffs argue in opposition that they have rebutted the presumption that Syncor acted consistently with ERISA when Syncor invested in its own stock. First, Plaintiffs claim that the *Moench* presumption does not apply to all EIAPs, only to 401(k) plans that qualify as ESOPs. (Pl. Opp. at 10). Plaintiffs base their argument on a recent Third Circuit decision which states that no presumption of prudence attaches to an EIAP fiduciary's decision to invest plan assets in employer securities when the plan is not an ESOP, but merely an EIAP with a company stock component. (Pl. Opp. at 11). Plaintiffs claim that Syncor's Plan is not an ESOP, thus Syncor is not entitled to the *Moench* presumption of prudence. Second, Plaintiffs argue that assuming *arguendo* that Syncor is entitled to the *Moench* presumption, in order to overcome the presumption Plaintiffs only must show that the "company was facing mismanagement (*i.e.* the bribery scheme) which resulted in a steep decline in the value of the company stock . . . which suggest[s] that continued investment in Syncor stock might not have been a prudent investment." (Pl. Opp. at 12) (citing *In re Syncor ERISA Litig.*, 351 F.Supp.2d at 981–82).

a. *Plaintiffs' Arguments Against Summary Judgment Fail as a Matter of Law*

█ Plaintiffs' contentions are not well-taken. Plaintiffs' first argument that Syncor's Plan is not an ESOP and is not entitled to the *Moench* presumption fails to present a triable issue. Notwithstanding Plaintiffs' reliance upon the Third Circuit case, the Ninth Circuit held in *Wright* that ESOPs and EIAPs are treated the same for a fiduciary duty analysis. *Wright*, 360 F.3d at 1098 n. 3. It is indisputable that the Ninth Circuit, and not the Third Circuit, is binding precedent on the Court. *In re Syncor ERISA Litig.*, 351 F.Supp.2d at 980 (citing *Hart v. Massanari*, 266 F.3d 1155, 1169–70 (9th Cir. 2001)). Plaintiffs have conceded that Syncor's Plan qualifies as an EIAP under ERISA. (Zazove Decl., Exh. B). Thus, for purposes of this Motion, it is irrelevant whether Syncor's Plan qualifies as an ESOP since ESOPs and EIAPs are treated the same for a fiduciary duty analysis in the Ninth Circuit.

Plaintiffs' second argument fails for the reason that it misstates a district court case within the Ninth Circuit concerning prudence claims. Plaintiffs claim that the Court previously found in *In re Syncor ERISA Litig.*, 351 F.Supp.2d at 981–82, that Plaintiffs can rebut the *Moench* presumption by showing that Syncor was involved in a bribery scheme which resulted in a steep decline in the value of Syncor's stock. Plaintiffs' reliance upon this opinion is misplaced because Plaintiffs have taken a statement from that opinion out of context. Plaintiffs' cited language is a summary by the Court of Plaintiffs' allegations, not the Court's finding of what is required to rebut the *Moench* presumption. Plaintiffs' argument is therefore fatally flawed because it fails to utilize the correct legal standard within the Ninth Circuit for rebutting the *Moench* presumption.[8]

b. *Plaintiffs Fail to Present Evidence Creating a Triable Issue of Fact*

█ In addition to Plaintiffs' flawed arguments opposing Syncor's Motion, the Court grants Syncor's Motion with regard to Count One for the separate reason that Plaintiffs have not produced sufficient evidence to rebut the *Moench* presumption. To overcome the presumption, Plaintiffs needed to produce evidence showing that Syncor's "financial condition is seriously deteriorating and that there is a genuine risk of insider self-dealing." *Wright*, 360 F.3d at 1098; *In re Calpine Corp. ERISA Litig.*, 2005 WL 1431506 at *5.[9] Plaintiffs

have failed to produce evidence that Syncor's financial condition, despite the international bribery scheme, deteriorated in any way. Plaintiffs argue that the immediate drop in Syncor's stock price after public disclosure of the bribery scheme is sufficient to rebut the presumption. However, the Ninth Circuit expressly held in *Wright* that "mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the *Moench* presumption." *Wright*, 360 F.3d at 1099.

Syncor, however, has provided the Court with significant evidence showing that Syncor's financial viability was never threatened, even after the disclosure of the illegal overseas payments. First, the Court has taken judicial notice of Syncor's financial statements which show an increase in Syncor's revenues and gross profits during 2001 and through Syncor's third quarter of 2002. (RJN, Exhs.A–B). These financial statements show that Syncor's viability was not threatened throughout the class period and was not subject to the sort of deteriorating financial circumstances that must be shown to rebut the *Moench* presumption. *See Wright*, 360 F.3d at 1098–99. Moreover, Syncor's Form 10–Q for the quarter ended September 30, 2002, states that Syncor's international operations only generated approximately six percent of its overall revenues and seven percent of its gross profits. (RJN, Exhs.A–B). It is undisputed that the bribery scheme was limited to Syn-

---

8. Even if this was the correct legal standard for rebutting the presumption, Plaintiffs have failed to show any evidence of a "steep decline" in Syncor's stock price. Indeed, the stock price that was paid by Cardinal Health for Syncor's shares was actually in the range Syncor was trading at from the time the merger was announced in June 2002 until the disclosure of the bribery scheme in November 2002.

9. The Court notes that the Ninth Circuit in *Wright* specifically distinguished a line of district court cases where the presumption of prudence had been rebutted by evidence that "clearly implicated the company's viability as an ongoing concern," such as imminent financial collapse of the company or bankruptcy. *Wright*, 360 F.3d at 1099 n. 5 (discussing *Stein v. Smith*, 270 F.Supp.2d 157 (D.Mass. 2003) and *Rankin v. Rots*, 278 F.Supp.2d 853 (E.D.Mich.2003)).

cor's international operations and did not involve Syncor's domestic operations. Plaintiffs have failed to produce evidence showing that impropriety within Syncor's limited international business division had any material affect on Syncor's overall financial viability.

In addition to financial statements, Syncor produced spreadsheets containing the historical stock prices for Syncor, the NASDAQ index, and the S & P 500 index.[10] These spreadsheets show that Syncor stock outperformed both the NASDAQ index and the S & P 500 index during the class period. (Farhang Decl., Exhs. D–G). Additionally, Syncor provided the Court with numerous reports written by investment advisors concerning the disclosure of the bribery scheme and its impact on Syncor and the merger with Cardinal. (Zazove Decl., Exhs. F–I, K–L). Many of these reports recommended holding Syncor stock which is evidence of the analysts' confidence in Syncor's ongoing financial viability. *See Kuper,* 66 F.3d at 1460 (finding defendant's evidence that investment advisors recommended holding company stock as evidence of defendant's viability as a company). In fact, none of the reports voiced a concern over Syncor's financial condition or speculated that the illegal overseas payments would materially affect Syncor. On the contrary, a few of the reports commented on the solid financial performance of Syncor and noted that Syncor's international business accounted for only about six percent of revenues and even less in earnings contribution. (Zazove Decl., Exhs. H–I).

In sum, in order to survive Syncor's Motion for Summary Judgment on the prudence claim, Plaintiffs were required to produce evidence sufficient to rebut the *Moench* presumption afforded to Syncor. To do this, Plaintiffs would have had to provide the Court with evidence that Syncor knew that its financial condition was seriously deteriorating and that there was a genuine risk of insider self-dealing. *Wright,* 360 F.3d at 1098; *See also Pa. Fed'n v. Northfolk S. Corp. Thoroughbred Ret. Inv. Plan of Norfolk S. Corp.,* 2004 WL 228685 at *7 (E.D.Pa.2004) (finding that a drop in stock price and weakness in a company's performance is enough to win a motion to dismiss for a breach of prudence claim, but insufficient for summary judgment). Plaintiffs failed to produce sufficient evidence to meet their burden. Therefore, Syncor is entitled to summary judgment as to Count One of the Consolidated Complaint as a matter of law.

**B.** *Plaintiffs' Claim for Syncor and the Director Defendants' Failure to Monitor the Committee Members and Provide Them With Accurate Information*

Under ERISA, fiduciaries have a limited duty to monitor and review the performance of their appointed fiduciaries. In particular, appointing fiduciaries should review the performance of their appointees at reasonable intervals and in such a manner as may be "reasonably expected to ensure that their performance has been in compliance with the terms of the plan" and statutory standards. 29 C.F.R. § 2509.75–8, FR–17; *In re Calpine Corp. ERISA Litig.,* 2005 WL 1431506 at *6.

In Count Two of the Consolidated Complaint, Plaintiffs allege that Syncor and the Director Defendants violated Sections 1104(a)(1)(A)-(D) and 1105 by failing to monitor the actions of the Committee Members and failing to provide the Committee Members with accurate information about Syncor's illegal overseas payments. (Compl.¶¶ 166–173).[11]

---

**10.** Prior to the merger with Cardinal, Syncor stock was traded on NASDAQ.

**11.** Count Two is alleged against both Syncor and the Director Defendants.

Upon review of the evidence, the Court grants Defendants' Motion for Summary Judgment on Count Two of the Consolidated Complaint. Plaintiffs' duty to monitor claim is derivative of their prudence claim and fails for the reasons stated above. Specifically, Defendants' Motion is granted because Plaintiffs failed to rebut the *Moench* presumption that Defendants acted prudently in purchasing Syncor's stock. Therefore, Plaintiffs' derivative claim for failure to monitor Committee Members fails. *See In re Calpine ERISA Litig.*, 2005 WL 1431506 at *6 (holding that failed prudence claim mooted Plaintiffs' monitoring claim because it was derivative of the prudence claim); *In re Duke Energy ERISA Litig.*, 281 F.Supp.2d 786, 795 (W.D.N.C.2003) (dismissing monitoring claim as derivative of dismissed prudence claim). In other words, because the duty to monitor is derivative of the duty of prudence, Syncor and the Director Defendants as appointing fiduciaries cannot be held liable for failing to monitor the Committee Members when the Committee Members themselves have committed no breach of fiduciary duty. Thus, because the Court dismissed Count One for the prudence claim, Count Two for failure to monitor and provide accurate information is accordingly moot.

## V. *EVIDENTIARY OBJECTIONS*

To the extent the Court relied on the parties' evidence, objections to that evidence are overruled.

## VI. *CONCLUSION*

In light of the foregoing, the Court finds that summary judgment is appropriate on the causes of action asserted by Plaintiffs. Therefore, Defendants Syncor and Funari's Motion for Summary Judgment is granted and Defendant Fu's Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**